# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **BERKLEY INSURANCE COMPANY,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case No.     **21-cv-103** |
| ) | |
| **ILLINOIS CAFÉ AND SERVICE** ) | |
| **COMPANY, LLC, LAREDO HOSPITALITY** ) | |
| **VENTURES, LLC, DANIEL FISCHER,** ) | |
| **GARY LEFF, CHARITY JOHNSON, and** ) | |
| **GOLD RUSH AMUSEMENTS, INC.,** ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, BERKLEY INSURANCE COMPANY, by and through its attorneys, TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP, and for its Complaint for Declaratory Judgment against ILLINOIS CAFÉ AND SERVICE COMPANY, LLC, LAREDO HOSPITALITY VENTURES, LLC, DANIEL FISCHER, GARY LEFF, CHARITY JOHNSON, and GOLD RUSH AMUSEMENTS, INC., states as follows:

## THE PARTIES

    1.    BERKLEY INSURANCE COMPANY ("BIC") is a Delaware corporation with its principal place of business in Connecticut.

    2.    ILLINOIS CAFÉ AND SERVICE COMPANY, LLC ("ICSC") is a limited liability company comprised of one member: DANIEL FISCHER. DANIEL FISCHER is domiciled in Illinois.

    3.    LAREDO HOSPITALITY VENTURES, LLC ("LAREDO HOSPITALITY") is a limited liability company comprised of two members: DANIEL FISCHER and CHARITY JONES. DANIEL FISCHER is domiciled in Illinois. CHARITY JONES is domiciled in Illinois.

4. GARY LEFF is domiciled in Illinois.

5. GOLD RUSH AMUSEMENTS, INC. ("GOLD RUSH") is an Illinois corporation with its principal place of business in Illinois.

## JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, this case relates to two insurance policies each providing liability limits of $1 million, subject to their terms, exclusions, and conditions. Additionally, the Underlying Lawsuit for which coverage is sought from BIC alleges tortious interference with at least forty-two contracts between multi-million dollar companies.

## VENUE

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants are residents of Illinois and all Defendants are residents of this judicial district.

8. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this litigation occurred in this judicial district.

## THE UNDERLYING LAWSUIT

**A. THE ESTABLISHMENTS' COMPLAINTS**

9. On or about January 23, 2019, various "Establishments" managed and supervised by LAREDO HOSPITALITY and owned by ICSC filed a Complaint against GOLD RUSH in the Circuit Court of Cook County assigned case no. 2019 CH 00902 ("the Underlying Lawsuit"). A copy of the Complaint filed in the Underlying Lawsuit is attached here as **Exhibit A**.

10. On or about May 30, 2019, the Establishments filed an Amended Complaint against GOLD RUSH in the Underlying Lawsuit. A copy of the Amended Complaint in the Underlying Lawsuit is attached hereto as **Exhibit B**.

11. On or about January 27, 2020, the Establishments filed a Second Amended Complaint against GOLD RUSH in the Underlying Lawsuit. A copy of the Second Amended Complaint is attached hereto as **Exhibit C**.

12. The Complaint, Amended Complaint, and Second Amended Complaint (collectively, "the Underlying Complaints") allege that the Establishments are businesses licensed under Illinois law to operate video gaming on their premises.

13. The Underlying Complaints alleges that prior to November 16, 2018, LAREDO HOSPITALITY owned 100% of the equity interests in the Establishments.

14. The Underlying Complaints allege that GOLD RUSH is in the business of placing and operating video gaming terminals for use by the public. GOLD RUSH places its video gaming terminals in existing businesses owned by others that seek to offer video gaming.

15. The Underlying Complaints allege that, prior to November 16, 2018, each of the Establishments entered into a contract with GOLD RUSH setting forth the obligations of each party with respect to the placement and operation of video gaming terminals in the Establishments ("the Gaming Contracts").

16. The Underlying Complaints allege that on November 16, 2018, ICSC purchased 100% of the equity in the Establishments.

17. The Underlying Complaints seek to terminate the Gaming Contracts pursuant to one or more terms, conditions, and/or provisions of the Gaming Contracts.

B. **GOLD RUSH'S THIRD-PARTY COMPLAINTS**

18. On or about January 22, 2020, GOLD RUSH filed a Third-Party Complaint in the Underlying Lawsuit against LAREDO HOSPITALITY, ICSC, CHARITY JOHNS, DANIEL FISCHER, and GARY LEFF (collectively, "Third-Party Defendants"). The Third-Party Complaint also names Midwest TRO and Allyson Estey (Midwest SRO's member) as defendants. A copy of the Third-Party Complaint is attached hereto as **Exhibit D**.

19. On or about May 18, 2020, GOLD RUSH filed an Amended Third-Party Complaint in the Underlying Lawsuit against the same parties. A copy of the Amended Third-Party Complaint is attached hereto as **Exhibit E**.

20. The Third-Party Complaint and the Amended Third-Party Complaint (collectively, "the Third-Party Complaints") alleges that the Third-Party Defendants conspired to force GOLD RUSH out of the Establishments and to replace GOLD RUSH with Midwest SRO, another terminal operator.

21. The Third-Party Complaints allege that in April 2017, LAREDO HOSPITALITY pressured GOLD RUSH into executing addenda to the Gaming Contracts allowing for termination of the contracts without cause, which GOLD RUSH would not have signed had they been aware of the conspiracy.

22. The Third-Party Complaints allege that on November 16, 2018, LAREDO HOSPITALITY sold its interest in the Establishments to ICSC as part of a "sham" transaction in an effort to trigger a "change of control" provision in the contracts allowing for termination of the Gaming Contracts.

**C.     UNTIMELY NOTICE TO BIC**

23.     On July 23, 2020, BIC for the first time received notice of the Second Amended Complaint and the Amended Third-Party Complaint.

24.     Through BIC's own investigation, BIC procured the Complaint, Amended Complaint, and Third-Party Complaint.

## THE BIC POLICIES

25.     BIC issued an Executive Liability Insurance Policy to ICSC as the Named Insured bearing policy number DCP-1733224-P1, effective from February 15, 2019 to February 15, 2020 ("the 19-20 BIC Policy").  A copy of the 19-20 BIC Policy is attached hereto as **Exhibit F**.

26.     BIC issued a renewal Executive Liability Insurance Policy to ICSC as the Named Insured bearing policy number DCP-1733224-P2, effective from February 15, 2020 to August 23, 2020 (the "20-20 BIC Policy").  A copy of the 20-20 BIC Policy is attached hereto as **Exhibit G**.

27.     The 19-20 BIC Policy and the 20-20 BIC Policy each provide, among other things, Directors, Officers and Corporate Liability Insurance coverage, subject to a $1,000,000 limit of liability.

### COUNT I – NO DUTY TO DEFEND UNDER THE 20-20 BIC POLICY: INSURING AGREEMENT IS NOT SATISFIED

28.     BIC adopts and realleges Paragraphs 1 through 27 of its Complaint for Declaratory Judgment as and for Paragraph 28 of Count I of its Complaint for Declaratory Judgment, as if fully set forth herein.

29.     Section I (Insuring Agreements) of the Directors, Officers and Corporate Liability Insurance Coverage Section of the 20-20 BIC Policy provides, in relevant part, as follows:

**A.     Directors and Officers Liability Coverage**

> This **Policy** shall pay on behalf of the **Insured Persons** all **Loss** up to the Limit of Liability applicable to this coverage section arising from any **Claim** first made against the **Insured Persons** during the **Policy Period** and reported to the **Insurer** in accordance with section VII. of the Common Policy Terms and Conditions Section of this **Policy**, for any actual or alleged **Wrongful Act**, except and to the extent that the **Insured Entity** has indemnified the **Insured Persons**.
>
> \* \* \*
>
> C. **Corporate Coverage**
>
> This **Policy** shall pay on behalf of the **Insured Entity** all **Loss** up to the Limit of Liability applicable to this coverage section arising from any **Claim** first made against the **Insured Entity** during the **Policy Period** and reported to the **Insurer** in accordance with section VII, of the Common Policy Terms and Conditions Section of this **Policy**, for any actual or alleged **Wrongful Act**.

30. The 20-20 BIC Policy affords coverage for "Claims" *first made* against "Insured Persons" and "Insured Entities" during the policy period, between February 15, 2020 and August 23, 2020.

31. Section III (Definitions) of the Directors, Officers and Corporate Liability Insurance Coverage Section defines "Claim" to mean, in relevant part, the following:

> A. **Claim** means:
>
> 1. a written demand for monetary or non-monetary relief, including but not limited to, any demand for mediation, arbitration, or other alternative dispute resolution process, arising from a **Wrongful Act**; or
>
> 2. a civil, criminal, administrative or arbitration proceeding for monetary or non-monetary relief filed against an **Insured** arising from a **Wrongful Act** which is commenced by: (a) service of a complaint or similar proceeding; (b) return of an indictment, information or similar document; or (c) receipt or filing of a notice of charges; [. . .]
>
> \* \* \*
>
> A **Claim** shall be deemed to have been first made at the time notice of the **Claim** is first received by any **Insured**.

32. The Third-Party Complaint and the Amended Third-Party Complaint are "Claims."

33. "Claims" are deemed first made at the time notice of the "Claim" is first received by any "Insured."

34. The Third-Party Complaint was filed on or about January 22, 2020 and received by ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, and/or GARY LEFF on or about January 22, 2020.

35. The Third-Party Complaint is not a "Claim" first made against "Insured Persons" and "Insured Entities" during the effective dates of the 20-20 BIC Policy.

36. When a matter involves multiple "Claims," Section VII (Notice of Claims) of the Common Policy Terms and Conditions Section of the 20-20 BIC Policy provides, in relevant part, as follows:

> **C.** **Related Wrongful Acts**
>
> All **Claims** based upon or arising out of the same **Wrongful Act** or any **Related Wrongful Acts**, or one or more series of any similar, repeated or continuous **Wrongful Acts** or **Related Wrongful Acts**, shall be considered a single **Claim**. Each **Claim** shall be deemed to be first made at the earliest of the following times:
>
> 1. when the earliest **Claim** arising out of such **Wrongful Act** or **Related Wrongful Acts** was first made; or
> 2. when notice pursuant to section VI. B. above of a fact, circumstance or situation giving rise to such **Claim** is given.

37. All "Claims" based upon or arising out of the same "Wrongful Act" or "Related Wrongful Acts" are considered a single "Claim" first made when the earliest "Claim" arising out of the "Wrongful Act" or "Related Wrongful Acts" was first made.

38. Section III (Definitions) of the Directors, Officers and Corporate Liability Insurance Coverage Section defines "Wrongful Act," and Section III (Definitions) of the Common Policy Terms and Conditions Section defines "Related Wrongful Acts," to mean the following:

> J. **Wrongful Act** means act actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by:
>
>> 1. any **Insured Person** in their respective capacity as such for the **Insured Entity**, or any matter claimed against them by reason of their status as an **Insured Person** with the **Insured Entity**; or
>>
>> * * *
>>
>> 3. the **Insured Entity**.
>
> * * *
>
> Q. **Related Wrongful Acts** means **Wrongful Acts** which are the same as, related or continuous or that are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

39. The Third-Party Complaint and Amended Third-Party Complaint are "Claims" based upon or arising out of the same "Wrongful Act" or "Related Wrongful Acts" (to the extent those definitions are satisfied) and, therefore, considered a single "Claim" first made at the time the Third-Party Complaint was received by any "Insured."

40. The 20-20 BIC Policy treats the Third-Party Complaint and the Amended Third-Party Complaint as a single "Claim" first made on or about January 22, 2020.

41. The Amended Third-Party Complaint is not a "Claim" first made against "Insured Persons" and "Insured Entities" during the effective dates of the 20-20 BIC Policy, which incepted on February 15, 2020.

42. BIC has no duty to defend ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, or GARY LEFF in connection with the Third-Party Complaints in the Underlying Lawsuit under the 20-20 BIC Policy because the Insuring Agreement is not satisfied.

43. An actual controversy exists between BIC and ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, and GARY LEFF, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, BIC, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to 20-20 BIC Policy;

b. Find and declare that BIC has and had no duty to any individual or entity under the 20-20 BIC Policy to defend the Underlying Lawsuit; and

c. Grant BIC such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT II – NO DUTY TO DEFEND UNDER THE 19-20 BIC POLICY: INSURING AGREEMENT IS NOT SATISFIED

44. BIC adopts and realleges Paragraphs 1 through 27 of its Complaint for Declaratory Judgment as and for Paragraph 44 of Count II of its Complaint for Declaratory Judgment, as if fully set forth herein.

45. Section I (Insuring Agreements) of the Directors, Officers and Corporate Liability Insurance Coverage Section of the 19-20 BIC Policy provides, in relevant part, as follows:

> **A.  Directors and Officers Liability Coverage**
>
> This **Policy** shall pay on behalf of the **Insured Persons** all **Loss** up to the Limit of Liability applicable to this coverage section arising from any **Claim** first made against the **Insured Persons** during the **Policy Period** and reported to the **Insurer** in accordance with section VII. of the Common Policy Terms and Conditions Section of this **Policy**, for any actual or alleged **Wrongful Act**, except and to the extent that the **Insured Entity** has indemnified the **Insured Persons**.
>
> \* \* \*
>
> **C.  Corporate Coverage**
>
> This **Policy** shall pay on behalf of the **Insured Entity** all **Loss** up to the Limit of Liability applicable to this coverage section arising from any **Claim** first made against the **Insured Entity** during the **Policy Period** and reported to the **Insurer** in accordance with section VII, of the Common Policy Terms and Conditions Section of this **Policy**, for any actual or alleged **Wrongful Act**.

46. The 19-20 BIC Policy afford coverage for "Claims."

47. Section III (Definitions) of the Directors, Officers and Corporate Liability Insurance Coverage Section defines "Claim" to mean, in relevant part, the following:

> A. **Claim** means:
>
> 1. a written demand for monetary or non-monetary relief, including but not limited to, any demand for mediation, arbitration, or other alternative dispute resolution process, arising from a **Wrongful Act**; or
>
> 2. a civil, criminal, administrative or arbitration proceeding for monetary or non-monetary relief filed against an **Insured** arising from a **Wrongful Act** which is commenced by: (a) service of a complaint or similar proceeding; (b) return of an indictment, information or similar document; or (c) receipt or filing of a notice of charges; [. . .]
>
> \* \* \*
>
> A **Claim** shall be deemed to have been first made at the time notice of the **Claim** is first received by any **Insured**.

48. The Third-Party Complaint and the Amended Third-Party Complaint are "Claims."

49. When a matter involves multiple "Claims," Section VII (Notice of Claims) of the Common Policy Terms and Conditions Section of the 19-20 BIC Policy provides, in relevant part, as follows:

> C. **Related Wrongful Acts**
>
> All **Claims** based upon or arising out of the same **Wrongful Act** or any **Related Wrongful Acts**, or one or more series of any similar, repeated or continuous **Wrongful Acts** or **Related Wrongful Acts**, shall be considered a single **Claim**. Each **Claim** shall be deemed to be first made at the earliest of the following times:
>
> 1. when the earliest **Claim** arising out of such **Wrongful Act** or **Related Wrongful Acts** was first made; or
> 2. when notice pursuant to section VI. B. above of a fact, circumstance or situation giving rise to such **Claim** is given.

50. All "Claims" based upon or arising out of the same "Wrongful Act" or "Related Wrongful Acts" are considered a single "Claim" first made when the earliest "Claim" arising out of the "Wrongful Act" or "Related Wrongful Acts" was first made.

51. Section III (Definitions) of the Directors, Officers and Corporate Liability Insurance Coverage Section defines "Wrongful Act," and Section III (Definitions) of the Common Policy Terms and Conditions Section defines "Related Wrongful Acts," to mean the following:

> J. **Wrongful Act** means act actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by:
>
>> 1. any **Insured Person** in their respective capacity as such for the **Insured Entity**, or any matter claimed against them by reason of their status as an **Insured Person** with the **Insured Entity**; or
>>
>> \* \* \*
>>
>> 3. the **Insured Entity**.
>
> \* \* \*
>
> Q. **Related Wrongful Acts** means **Wrongful Acts** which are the same as, related or continuous or that are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

52. The Third-Party Complaint and Amended Third-Party Complaint are "Claims" based upon or arising out of the same "Wrongful Act" or "Related Wrongful Acts" (to the extent those definitions are satisfied) and, therefore, considered a single "Claim" first made at the time the Third-Party Complaint was received by any "Insured."

53. The Third-Party Complaint was filed on or about January 22, 2020 and received by ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, and/or GARY LEFF on or about January 22, 2020.

54. The 19-20 BIC Policy treats the Third-Party Complaint and the Amended Third-Party Complaint as a single "Claim" first made on or about January 22, 2020

55. Pursuant to the Insuring Agreement of the 19-20 BIC Policy, the policy affords coverage for "Claims" reported to BIC in accordance with section VII. of the Common Policy Terms and Conditions Section of the policy.

56. Section VIII of the Common Policy Terms and Conditions Section of the 19-20 BIC Policy provides, in relevant part, as follows:

> **A.    Notice of Claim**
>
> > As a condition precedent to their rights under this **Policy**, any **Insured** shall give the **Insurer** written notice of a **Claim** first made against the **Insureds** during the **Policy Period**, as soon as practicable, but in no event later than 90 days after the expiration of the **Policy Period.**

57. As a condition precedent to coverage and requirement to satisfy the Insuring Agreement of the 19-20 BIC Policy, BIC was entitled to notice of the Third-Party Complaint received by any "Insured" on or about January 22, 2020 between February 15, 2019 and February 15, 2020, but in no event later than May 15, 2020 (ninety days after the expiration of the 19-20 BIC Policy).

58. BIC did not receive notice of the Third-Party Complaint from ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, GARY LEFF, or any other individual or entity until July 23, 2020.

59. By failing to provide timely notice of the Third-Party Complaint, from ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, and GARY LEFF materially breached a condition precedent to coverage under the 19-20 BIC Policy.

60. BIC has no duty to defend ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, or GARY LEFF in connection with the Third-Party Complaints in the Underlying Lawsuit under the 19-20 BIC Policy because the notice requirement of the Insuring Agreement is not satisfied.

61. An actual controversy exists between BIC and ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, and GARY LEFF, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, BIC, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to 19-20 BIC Policy;

b. Find and declare that BIC has and had no duty to any individual or entity under the 19-20 BIC Policy to defend the Underlying Lawsuit; and

c. Grant BIC such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT III – NO DUTY TO DEFEND UNDER EITHER BIC POLICY: PRIOR AND PENDING LITIGATION EXCLUSION APPLIES

62. BIC adopts and realleges Paragraphs 1 through 27 of its Complaint for Declaratory Judgment as and for Paragraph 62 of Count III of its Complaint for Declaratory Judgment, as if fully set forth herein.

63. Section IV (Exclusions) of the Directors, Officers and Corporate Liability Insurance Coverage Section provides that the BIC Policies do not apply to "Claims":

J. based upon, arising out of, directly or indirectly resulting from or in consequence of or in any way involving:

1. any prior or pending civil, criminal, administrative or arbitration proceeding or investigation as of the **Prior and Pending Litigation Date**; or
2. any fact, circumstance, situation, transaction or event underlying or alleged in such proceeding or investigation;

regardless of the legal theory upon which such **Claim** is predicated.

64. Exclusion J. precludes coverage for a "Claim" based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any prior or pending

civil proceeding as of the Prior and Pending Litigation (PPL) Date, identified in the Declarations of the BIC Policies as February 15, 2019.

65. The Underlying Lawsuit is a civil proceeding.

66. The Third-Party Complaint and the Amended Third-Party Complaint were filed in the Underlying Lawsuit brought by the Establishments against GOLD RUSH.

67. The Underlying Lawsuit was pending as of January 23, 2019, prior to the February 15, 2019 PPL Date.

68. As prior and new owners of the Establishments, LAREDO HOSPITALITY, ICSC, and their respective members were aware of the Underlying Lawsuit prior to February 15, 2019.

69. BIC has no duty to defend ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, or GARY LEFF in the Underlying Lawsuit under either the 19-20 BIC Policy or the 20-20 BIC Policy, because the "Claim" for which coverage is sought is based upon, arises out of, directly or indirectly results from or in consequence of, and/or involves a pending civil proceeding as of February 15, 2019.

70. An actual controversy exists between BIC and ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, and GARY LEFF, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, BIC, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to 19-20 BIC Policy and the 20-20 BIC Policy;

b. Find and declare that BIC has and had no duty to any individual or entity under either the 19-20 BIC Policy or the 20-20 BIC Policy to defend the Underlying Lawsuit; and

  c.  Grant BIC such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT IV - NO DUTY TO DEFEND LAREDO HOSPITALITY OR ITS MEMBERS UNDER EITHER BIC POLICY: <u>PAST ACTS EXCLUSION APPLIES</u>

71. BIC adopts and realleges Paragraphs 1 through 27 of its Complaint for Declaratory Judgment as and for Paragraph 71 of Count IV of its Complaint for Declaratory Judgment, as if fully set forth herein.

72. Section I (Insuring Agreements) of the Directors, Officers and Corporate Liability Insurance Coverage Section of the BIC Policies provides, in relevant part, as follows:

> **A.** **Directors and Officers Liability Coverage**
>
> This **Policy** shall pay on behalf of the **Insured Persons** all **Loss** up to the Limit of Liability applicable to this coverage section arising from any **Claim** first made against the **Insured Persons** during the **Policy Period** and reported to the **Insurer** in accordance with section VII. of the Common Policy Terms and Conditions Section of this **Policy**, for any actual or alleged **Wrongful Act**, except and to the extent that the **Insured Entity** has indemnified the **Insured Persons**.
>
>            \* \* \*
>
> **C.** **Corporate Coverage**
>
> This **Policy** shall pay on behalf of the **Insured Entity** all **Loss** up to the Limit of Liability applicable to this coverage section arising from any **Claim** first made against the **Insured Entity** during the **Policy Period** and reported to the **Insurer** in accordance with section VII, of the Common Policy Terms and Conditions Section of this **Policy**, for any actual or alleged **Wrongful Act**.

73. The BIC Policies only provide coverage to "Insured Persons" and "Insured Entities."

74. LAREDO HOSPITALITY is added as an "Insured Entity" by an endorsement to the BIC Policies entitled "Section III. H. Listed Insured Entity with Past Acts Exclusion."

75. With respect to LAREDO HOSPITALITY and individuals that would qualify as "Insured Persons" because of their role, job, or position at LAREDO HOSPITALITY, the BIC Policies apply to claims:

> IV.: based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:
>
> 1. any **Wrongful Act** which occurred on or before the Effective Date indicated above; or
> 2. any **Wrongful Act** occurring on or subsequent to the acquisition date which, together with a **Wrongful Act** occurring prior to such date, would constitute **Related Wrongful Acts**.

76. The BIC Policies do not provide coverage to LAREDO HOSPITALITY or any individual that would qualify as an "Insured Person" because of his or her role, job, or position at LAREDO HOSPITALITY, for "Claims" based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any "Wrongful Acts" which occurred on or before November 16, 2018 (the Effective Date identified in the endorsement), or any "Wrongful Act" occurring on or subsequent to November 16, 2018 which, together with a "Wrongful Act" occurring prior November 16, 2018, would constitute "Related Wrongful Acts."

77. The Amended Third-Party Complaint alleges, "[i]n between the failure of their legislative efforts in January 2017 and the filing of the constitutional challenge to the statutory prohibition in April 2017, Laredo (and its principals) pressured Gold Rush into executing addenda to the Gold Rush Contracts, which now serve as one of the Establishments' bases to terminate the Gold Rush Contracts in their most recent filings. Moreover, the Establishments, Laredo, ICSC, and Midwest SRO also formulated and executed the documents necessary for the Transaction, which served as another basis by which they sought termination of the Gold Rush Contracts."

78. The Amended Third-Party Complaint alleges that in or before March 2017, "Laredo, the Establishments, and other coconspirators were already scheming to wrongfully force

Gold Rush out of the Establishments in order to impermissibly control both sides of the video gaming operations. Had Gold Rush known about the scheme, it would not have agreed to the Addenda."

79. The Amended Third-Party Complaint alleges that "Laredo began working on the arrangement that would lead to the Transaction as early as December 7, 2017, immediately after the Circuit Court rejected their constitutional challenges to the VGA provision. When their two legitimate efforts to evade the restrictions of Section 30 of the VGA failed, the Counter-Defendants commenced a third, improper effort."

80. The Amended Third-Party Complaint alleges that "[. . .] the IGB [Illinois Gaming Board] had been in communication with the Establishments and Laredo as early as December 7, 2017, and with Midwest SRO as early as July 16, 2018 regarding the [November 2018 purchase by ICSC of Laredo]."

81. The Amended Third-Party Complaint alleges that, "dating back to at least 2017, the Establishments have worked with others to manufacture circumstances that would permit them to prematurely terminate the Gold Rush Contracts and control both sides of video gaming operations at the Establishments."

82. The Amended Third-Party Complaint alleges a continuous course of conduct by LAREDO HOSPITALITY and its members starting in 2017 aimed at interfering with the Gaming Contracts and a continuation of that same type of conduct on and/or after November 16, 2018.

83. BIC has no duty to defend LAREDO HOSPITALITY or DANIEL FISCHER, CHARITY JOHNS, or GARY LEFF (with respect to their liability as members, directors, officers, etc. of LAREDO HOSPITALITY) in the Underlying Lawsuit under either the 19-20 BIC Policy or the 20-20 because the Past Acts Exclusion precludes coverage.

84. An actual controversy exists between BIC and ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, and GARY LEFF, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, BIC, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to 19-20 BIC Policy and the 20-20 BIC Policy;

b. Find and declare that BIC has and had no duty to LAREDO HOSPITALITY or DANIEL FISCHER, CHARITY JOHNS, or GARY LEFF (with respect to their liability as members, directors, officers, etc. of LAREDO HOSPITALITY) under either the 19-20 BIC Policy or the 20-20 BIC Policy to defend the Underlying Lawsuit; and

c. Grant BIC such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV – BIC DOES NOT OWE A DUTY TO INDEMNIFY

85. BIC adopts and realleges Paragraphs 1 through 73 of its Complaint for Declaratory Judgment as and for Paragraph 85 of Count V of its Complaint for Declaratory Judgment, as if fully set forth herein.

86. When an insurer does not owe a duty to defend, the insurer correspondingly does not owe a duty to indemnify.

87. Because BIC owes no duty to any individual or entity under the BIC Policy to defend the Underlying Lawsuit, BIC owes no duty to any individual or entity under the BIC Policy to indemnify him/her/it for a settlement or judgment in the Underlying Lawsuit.

88. An actual controversy exists between BIC and ICSC, LAREDO HOSPITALITY, DANIEL FISCHER, CHARITY JOHNS, and GARY LEFF, and by the terms and provisions of

28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, BIC, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to 19-20 BIC Policy and the 20-20 BIC Policy;

b. Find and declare that BIC has no duty to any individual or entity under either the 19-20 BIC Policy or the 20-20 BIC Policy to indemnify him/her/it for a settlement or judgment in the Underlying Lawsuit; and

c. Grant BIC such other and further relief that the Court deems proper under the facts and circumstance.

Dated: January 8, 2021            Respectfully Submitted,

**BERKLEY INSURANCE COMPANY**

By: /s/ Jeremy S. Macklin
Jeremy S. Macklin
*Attorney for Plaintiff*
*Berkley Insurance Company*

Jeremy S. Macklin (6303870)
**TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP**
303 W. Madison St., Suite 1200
Chicago, Illinois 60606
(312) 332-3900 (t)
(312) 332-3908 (f)
jmacklin@tlsslaw.com